Manuel B. SANTOS, et al.

v.

Bernard SACKS, Esquire, et al.

Civ. A. No. 87–2538.

United States District Court,
E.D. Louisiana.

Sept. 30, 1988.

Robert E. Winn, Sharon Mize, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, La., for plaintiffs.

Paul B. Deal, Francis Mulhall, Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, New Orleans, La., for defendants John P. Massicot, Silvestri, Marinaro & Massicot.

## ORDER AND REASONS

MENTZ, District Judge.

The motion of defendants, John Massicot and the firm of Silvestri, Marino & Massicot (Silvestri & Massicot), to dismiss and for judgment on the pleadings and the motion of plaintiffs, Judith and Manuel Santos, to transfer were submitted on a prior date. After reviewing the motions, the memoranda of counsel, the record, and the law, the Court will deny plaintiffs' motion to transfer and grant defendants' motion to dismiss. In addition, the Court raises sua sponte the issue of the law applicable to plaintiffs' contract claim for legal malpractice. The Court finds that a Louisiana choice of law analysis weighs in favor of applying Florida law to the contract claim asserted against Bernard Sacks and Sacks & Basch and Louisiana law to the contract claim against John Massicot and Silvestri & Massicot.

## FACTS

This is an action for legal malpractice filed against defendants, Bernard Sacks, the law firm of Sacks & Basch, John Massicot, and the law firm of Silvestri & Massicot, for sub-standard conduct in handling Manuel Santos's maritime personal injury suit. The facts which gave rise to this litigation are as follows. Manuel Santos, a resident of Florida, was injured in the Bahamas aboard a vessel in January, 1983. Santos hired Bernard Sacks, of Philadelphia, Pennsylvania, to prosecute his lawsuit. The employment contract between Santos and Sacks was signed by Santos in Florida. John Massicot of New Orleans, Louisiana also served as counsel for Santos in the personal injury suit. The legal association between Santos and Massicot arose solely by virtue of the acts of Bernard Sacks. Sacks associated Massicot and the Silvestri & Massicot firm to handle the case. The agreement between Sacks and Massicot provided that Massicot would receive forty percent of the net fee obtained from the case, with Sacks to receive sixty percent, and that Sacks would pay and approve all advanced costs. As a further condition of the referral, Sacks was to be consulted before any settlement agree-ments were perfected and was to maintain all direct contact with the client. In addition, Bernard Sacks's name was to appear on all pleadings as "Of Counsel". The letterhead of Sacks & Basch already listed Silvestri & Massicot as "Of Counsel".

Sacks and Massicot filed the personal injury suit in the Eastern District of Louisiana even though Louisiana had nothing to do with the claim. None of the parties resided in Louisiana and the injury did not occur there. The Court subsequently dismissed Santos's maritime claims against RCA Service Company, AUTEC III, and Landing Craft # 164 for lack of subject matter jurisdiction and against the United States of America for untimeliness. The suit, *Manuel Santos v. RCA Service Company, et al.,* Civil Action No. 83–3927 (E.D. La.), was dismissed with prejudice on October 22, 1985. On October 25, 1985, Massicot sent Santos a letter informing him of the dismissal of the personal injury suit and advising Santos that he may have a claim against Massicot for malpractice.

## I. PLAINTIFFS' MOTION TO TRANSFER

Manuel Santos and his wife filed this malpractice action on February 18, 1987 in the United Stated District Court for the Eastern District of Pennsylvania. Judge Shapiro of that district found that venue was improper because neither all of the plaintiffs nor all of the defendants resided in the Eastern District of Pennsylvania and the claim did not arise there. Ruling that plaintiffs' cause of action arose in the Eastern District of Louisiana, Judge Shapiro transferred the action to this district pursuant to 28 U.S.C. § 1406(a). Plaintiffs seek a transfer back to the Eastern District of Pennsylvania on the ground that the decision of the Pennsylvania Court was erroneous. Alternatively, plaintiffs seek a transfer under 28 U.S.C. § 1404(a) to the United States District Court for the Middle District of Florida.

## A. THIS COURT'S POWER TO RE-EXAMINE THE FINDINGS OF THE TRANSFEROR COURT

When a motion to transfer is granted and the case is transferred to another district,

"the transferee-district should accept the ruling on the transfer as the law of the case and should not re-transfer 'except under the most impelling and unusual circumstances' or if the transfer order is 'manifestly erroneous.'" *In Re Cragar Industries, Inc.*, 706 F.2d 503, 505 (5th Cir.1983), quoting, *United States v. Koenig*, 290 F.2d 166, 173 n. 11 (5th Cir.1961), *aff'd*, 396 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). Because this Court finds that Judge Shapiro's decision is not manifestly erroneous, it will not transfer this action back to the United States District Court for the Eastern District of Pennsylvania.

■ Title 28, United States Code, Section 1391(a) provides:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

A claim arises in the district where the most substantial contacts relating to the claim occurred. *Cheeseman v. Carey*, 485 F.Supp. 203, 211 (S.D.N.Y.1980), *remanded on other grounds*, 623 F.2d 1387 (2nd Cir. 1980). The Supreme Court has recognized that "in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)—may be assigned as the locus of the claim." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). The majority of the decisions interpreting *Leroy* have found that multi-district venue exists "only where the claim had very substantial contacts with, or a close relationship to, each of the districts claimed as potentially appropriate." *Cheeseman*, 485 F.Supp. at 212.

Plaintiffs urge this Court to hold that this malpractice action arose in the Eastern

District of Pennsylvania. That is where Bernard Sacks, the attorney who signed the contract to represent Manuel Santos, lives and works. John Massicot, the attorney Bernard Sacks retained to handle the case with him, had substantial contact with Pennsylvania as he received numerous referrals from the Pennsylvania firm. Bernard Sacks was "Of Counsel" to the Massicot firm and Silvestri & Massicot was "Of Counsel" to the Sacks firm.

■ These facts illustrate the professional relationship between the defendants regarding the personal injury claim. In contrast, the Eastern District of Louisiana is where Manuel Santos's personal injury claim was filed and where the most significant acts giving rise to the malpractice claim occurred. The Court finds that this district has more substantial contacts to the lawsuit than does the Eastern District of Pennsylvania and, accordingly, will accept the ruling of the transferor court.

B. WHETHER THIS COURT SHOULD TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA

■ Title 28, United States Code, Section 1404(a) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Before an action can be transferred under this statute, the transferee court must have personal jurisdiction over all parties and venue must be proper in that district. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3828; *Cooper v. Valley Line Company*, 320 F.Supp. 483 (W.D.Pa.1970).

■ In order to pass upon plaintiffs' motion to transfer, the Court requested affidavits regarding the contacts that John Massicot and Silvestri & Massicot (the Massicot defendants) have with Florida.[1] After

---

**1.** Affidavits were not requested of Bernard Sacks and Sacks & Bash because it was clear based on the record that these defendants were amenable to personal jurisdiction in Florida.

carefully evaluating all of the relevant facts and the applicable law, the Court concludes that the requirements of 28 U.S.C. § 1404(a) are not satisfied because the Massicot defendants are not subject to personal jurisdiction in Florida.

■ A federal district court in a diversity action may assert personal jurisdiction over a nonresident defendant only to the extent permitted by the laws of the forum. *Mack Trucks v. Arrow Aluminum Castings Co.,* 510 F.2d 1029, 1031 (5th Cir.1975); *Arrowsmith v. United Press International,* 320 F.2d 219, 222 (2nd Cir.1963). However, "regardless of the breadth of the state statute, the exercise of jurisdiction over a defendant must comport with the ... due process clause of the fourteenth amendment." *Gold Kist, Inc. v. Baskin–Robbins Ice Cream,* 623 F.2d 375, 377 (5th Cir.1980).

In light of these considerations, this Court will first determine whether the Massicot defendants are amenable to personal jurisdiction under the Florida long-arm statutes. If the requirements of the Florida long-arm statutes are satisfied, federal law will be applied to determine whether the assertion of jurisdiction is consistent with due process.

■ The Court notes at the outset that Florida has elected not to extend long arm jurisdiction to the full extent permitted by the Constitution. *Bloom v. A.H. Pond Co., Inc.,* 519 F.Supp. 1162, 1165 (S.D.Fla.1981); *Pollard v. Steel Systems Construction Co., Inc.,* 581 F.Supp. 1551, 1552 (S.D.Fla. 1984). Further, plaintiffs, as the party seeking to invoke jurisdiction under the long-arm statute, have the burden to plead sufficient material facts to establish the basis for the exercise of jurisdiction. *See Oriental Imports & Exports v. Maduro & Curiels,* 701 F.2d 889, 891 (11th Cir.1983). Finally, the language setting forth the contacts must be strictly construed to ensure compliance with due process requirements. *Aetna Life & Casualty Co. v. Therm–O–Disc, Inc.,* 488 So.2d 83, 86 (Fla.App. 1st Dist.1986).

■ Plaintiffs allege that the Massicot defendants are subject to personal jurisdiction in Florida under section 48.193(1)(a) of the Florida long-arm statute [2] because they

---

Bernard Sacks mailed the contingency fee contract to Florida for Manuel Santos to sign. The Florida long-arm statute enables Florida to exercise personal jurisdiction over any natural person who, either directly or through an agent, causes an injury to persons in Florida arising out of an act or omission outside Florida if, at or about the time of the injury, he was engaged in solicitation or service activities in Florida. Fla.Stat. § 48.193(1)(f)(1) (1986).

2. Section 48.193, Florida Statutes (1986), set forth below, lists the acts which will subject a person to the jurisdiction of the courts of Florida.

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

(c) Owning, using, or possessing any real property within this state.

(d) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(e) With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of the commencement of this action or, if the defendant resided in this state preceding the commencement of the action, whether cohabiting during that time or not. This paragraph does not change the residency requirement for filing an action for dissolution of marriage.

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

practice law in Florida on a continuing basis and, therefore, "do business" in Florida.[3] Assuming for expediency that the Massicot defendants are operating a business in Florida within the meaning of the statute, "doing business in [Florida] is not a sufficient basis, standing alone, upon which to predicate long-arm jurisdiction. There must also be some nexus or connection between the business that is conducted in Florida and the cause of action alleged." *Bloom*, 519 F.Supp. at 1168; *See also Pollard*, 581 F.Supp. at 1552; *McKenzie v. Bonning*, 474 So.2d 1241, 1242 (Fla.App. 3rd Dist.1985); *Canron Corp. v. Holt*, 444 So.2d 529, 530 (Fla.App. 1st Dist.1984). This "connexity requirement" is set forth in the statute, which lists the acts that will subject a person to jurisdiction in Florida "for any cause of action arising from the doing of [those] acts." *See* Fla.Stat. § 48.193(1) (1986); *See also Pollard*, 581 F.Supp. at 1553. Plaintiffs in the instant case have failed to satisfy the requirements of section 48.193(1)(a) because their malpractice action against the Massicot defendants is based on acts or omissions which occurred in Louisiana.

Plaintiffs also allege that the Massicot defendants are subject to Florida's jurisdiction under section 48.193(1)(g) of the Florida long-arm statute[4] because they breached the employment contract wherein Manuel Santos retained "Bernard Sacks, Esq. or any other attorney or firm that [Bernard Sacks] may designate" to represent Mr. Santos in his personal injury claim. Though plaintiffs concede that the Massicot defendants were not signatories to the contract between Manuel Santos and Bernard Sacks, plaintiffs allege that the legal representation that formed the basis for the malpractice suit was performed under and in reliance upon that contract. Plaintiffs believe that jurisdiction may be obtained under this provision of the long-arm statute because in accepting a referral to represent a Florida resident, it was within the Massicot defendants' reasonable expectations that certain acts would have to be and were actually performed in Florida.

The Court cannot agree with plaintiffs' interpretation of the statute. Section 48.-193(1)(g) only subjects a nonresident to jurisdiction in Florida for a "cause of action arising from" the breach of a contract "by failing to perform acts required by the contract to be performed in Florida." Plaintiffs' cause of action against the Massicot defendants is not based upon their failure to perform acts which the contract required to be performed in Florida. The contract did not specify the place of performance. In fact, the personal injury claim was filed in Louisiana. The only contact the Massicot defendants had with Florida regarding the personal injury suit is that John Massicot telephoned and mailed letters to plaintiffs at their home in Florida and went to Florida to participate in the deposition of Manuel Santos. The complaint which sets forth plaintiffs' contract action for legal malpractice does not allege any act or omission which was performed or should have been performed in Florida on the part of the Massicot defendants. Accordingly, the Court finds that

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
(3) Service of process upon any person who is subject to the jurisdiction of the courts of this state as provided in this section may be made by personally serving the process upon the defendant outside this state, as provided in s. 48.194. The service shall have the same effect as if it had been personally served within this state.
(4) If a defendant in his pleadings demands affirmative relief on causes of action unrelated to the transaction forming the basis of

the plaintiff's claim, the defendant shall thereafter in that action be subject to the jurisdiction of the court for any cause of action, regardless of its basis, which the plaintiff may by amendment assert against the defendant.
(5) Nothing contained in this section limits or affects the right to serve any process in any other manner now or hereinafter provided by law.

3. John Massicot and Silvestri & Massicot are engaged in the full-time practice of law in New Orleans, Louisiana. They have filed six lawsuits in Florida over the past ten years wherein they have associated Florida licensed co-counsel.

4. Quoted in note 2, supra.

there is no basis for asserting personal jurisdiction over these defendants under section 48.193(1)(g) of the Florida long-arm statute.

Finally, plaintiffs maintain that the Massicot defendants are subject to service of process in Florida under section 48.181, Florida Statutes (1984),[5] because the Massicot defendants are licensed to perform legal services in Florida. Plaintiffs' argument is based on the recent case of *Rose's Stores, Inc. v. Cherry*, 526 So.2d 749 (Fla. App. 5th Dist.1988). That case held that Rose's Stores, Inc. (Rose's) had sufficient minimum contacts to be sued in Florida for an accident which occurred in North Carolina and which was not connected with Rose's business activities in Florida since Rose's was qualified to do business in Florida and had appointed a resident agent for service of process in Florida as required by section § 48.091, Florida Statutes (1969).[6] Plaintiffs imply that an attorney who is a member of the Florida Bar and, therefore, is licensed to perform legal services in Florida, is subject to the State's personal juris-

diction under the analysis set forth in *Rose's*. John Massicot is not a member of the Florida Bar. However, plaintiffs note that at present, he represents the plaintiff in *Jenkins v. Palmer, et al.*, Civil Action No. 86–101 (8th Dist. Bradford Cty.), a case filed in Florida wherein John Massicot has associated Florida licensed co-counsel. The Judge presiding over *Jenkins* granted John Massicot's Rule 3.060(b) motion and issued an order allowing Massicot to practice before the courts of Florida to appear and sign pleadings. Accordingly, plaintiffs argue that Massicot is licensed to perform legal services in Florida[7] and, under *Rose's*, is subject to personal jurisdiction in Florida on a cause of action which does not arise from the legal services performed in Florida.

 It is this Court's opinion that membership in the Florida Bar does not, of itself, establish the minimum contacts required by due process to confer personal jurisdiction over a nonresident defendant. *Rose's* only recognized that the requisite minimum contacts to sustain "general jur-

---

5. Section 48.181, Florida Statutes (1984), reads: Service on nonresident engaging in business in state

(1) The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the secretary of state of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.
(2) If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.
(3) Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property,

through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

"Courts have held that section 48.181 (titled 'Service on nonresident engaging in business in state' (emphasis supplied)) provides a basis for establishing personal jurisdiction over nonresidents independent from the basis provided by section 48.193 (which is titled 'Acts subjecting persons to *jurisdiction* of courts of state' (emphasis supplied))." *American Motors Corp. v. Abrahantes*, 474 So.2d 271 (Fla.App. 3rd Dist. 1985).

6. Rose's was organized under the laws of the State of Delaware and was licensed to do business in the State of Florida.

7. It appears to the Court that John Massicot was granted leave of court to appear and sign pleadings before the Florida courts only for the purposes of the *Jenkins* case. However, the Court is willing to assume for the purposes of this motion that John Massicot was temporarily granted the same rights and privileges which are bestowed upon an attorney who is a member of the Florida Bar and is licensed to practice before all the courts of the state.

isdiction"[8] are established where a foreign corporation is qualified under Florida law to transact business in Florida and has appointed a resident agent for service of process under section 48.091, Florida Statutes (1969).

Where a nonresident defendant is not qualified to do business in the state, the party attempting to invoke the jurisdiction of the Florida courts under section 48.181 must show the requirements of doing business and connexity. *Id.* at 752; *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 971 (11th Cir.1986). As discussed heretofore in this opinion, plaintiffs' malpractice action against the Massicot defendants is not premised on acts or omissions that were performed or were to be performed in Florida.

Because plaintiffs have not established any basis for asserting personal jurisdiction over the Massicot defendants under the Florida long-arm statutes, plaintiffs motion to transfer this action to the United States District Court for the Middle District of Florida is denied.

## II. CHOICE OF LAW ANALYSIS OF PLAINTIFFS' CONTRACT ACTION

A lawsuit contains foreign elements when one or more of the parties are not residents of the forum or when legally significant facts occurred in a state other than the forum. When faced with this situation, the Court must determine whether and to what extent the forum will recognize the interests of her sister states. Plaintiffs filed this suit for legal malpractice under both tort and contract theories. A true conflict exists among the laws of the interested states (Louisiana, Pennsylvania, and Florida) regarding whether plaintiffs' complaint states a cause of action in contract for legal malpractice.

Under Louisiana law, a malpractice action which alleges that the attorney breached the standard of care owed to the client sounds in tort. *Cherokee Restau-*

*rant, Inc. v. Pierson*, 428 So.2d 995 (La. App. 1st Cir.1983), *writ denied*, 431 So.2d 773 (La.1983). Only when an attorney breaches an express warranty of result, such as "guarantees winning a lawsuit, guarantees title to property, or agrees to perform certain work and does nothing whatsoever," does an action for breach of contract arise. *Id.*

To the contrary, Pennsylvania law recognizes legal malpractice actions based on a written contract, on an oral contract of hiring, or on the breach of an implied contract. 42 Pa.Cons.Stat. §§ 5525(3) and (4), 5527(2) and (6); *Moore v. Walters*, 313 Pa.Super. 264, 459 A.2d 841 (1982). Florida also recognizes a cause of action for legal malpractice based on contract without requiring that the attorney guarantee a specific result. Fla.Stat. § 95.11(4)(a) (1986).

With an understanding of the law applicable to plaintiffs' contract claim, the Court will now turn to the choice of law analysis which governs this action. A Federal District Court in Louisiana must apply Louisiana's choice of law rules in a diversity action transferred pursuant to 28 U.S.C. § 1406(a). *Ellis v. Great Southwestern Corporation*, 646 F.2d 1099, 1103 (5th Cir. 1981). Under Louisiana law, a conflict between the substantive laws of the interested states is governed by the Second Restatement of Conflict of Laws. *Southern Insurance Company v. Consumer Insurance Agency*, 442 F.Supp. 30, 31 (E.D.La. 1977).

Section 6 of the Second Restatement of Conflicts provides:

(1) A Court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

---

**8.** When a state exercises personal jurisdiction over a defendant in a suit which does not arise out of or relate to the the defendant's contacts with the forum, the state exercises "general jurisdiction." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984).

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectation,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Section 6(1) is not applicable to the Court's analysis because the Louisiana legislature has not passed a statute defining the nature of a legal malpractice action. Therefore, the Court will analyze the factors set forth in section 6(2) to determine which law applies to plaintiffs' contract claim.

The Second Restatement seeks to apply the law of the state with the most significant relationship to the issue. Section 6(2), Comment C. The Court finds the following factors relevant to the issue at bar: (2)(b) "the relevant policies of the forum;" (2)(c) "the relevant policies of other interested states and the relative interest of those states in the determination of the particular issue;" (2)(d) "the protection of justified expectations;" and (2)(f) "certainty, predictability and uniformity of result."

## A. BERNARD SACKS, ESQ. AND SACKS & BASCH

■ Applying the relevant factors to plaintiffs' claim against Bernard Sacks and his law firm, Sacks & Basch, the Court finds that Florida has a greater interest in this case than do Louisiana or Pennsylvania. Plaintiffs are residents of Florida and were so at the time of Manuel Santos's injury. The Agreement to Represent, the breach of which forms the basis of the contract action, was executed in Florida. Florida law provides that a cause of action for breach of contract arises "where the last act necessary to complete the transaction is performed...." *Calhoun v. Grey-*

*hound Lines, Inc.*, 265 So.2d 18, 21 (Fla. 1972). Therefore, allowing a Florida citizen to assert a malpractice action under Florida law for breach of an employment contract executed in Florida protects the justified expectations of the parties and assures predictability and uniformity in the law. Furthermore, Florida has a manifest interest in enforcing the rights of its citizens who are victims of malpractice. Finally, Florida has an interest in requiring attorneys who contract to provide legal services for Florida residents to perform in a satisfactory manner.

Neither Louisiana nor Pennsylvania have a more significant interest than Florida. Bernard Sacks is a resident of Pennsylvania. Though the contract was performed in Louisiana, Louisiana did not have a significant interest in the personal injury suit. None of the parties resided in Louisiana, the claim did not arise there, and federal law, not Louisiana law, governed the suit. Nor does Louisiana have a significant interest in this malpractice action filed by nonresident plaintiffs against nonresident defendants arising from the personal injury suit.

The Court finds that applying Florida law to the contract action against Bernard Sacks and Sacks & Basch does not offend the policies of Pennsylvania or Louisiana. Both states recognize a cause of action for legal malpractice based on a contract theory. The Pennsylvania statute that provides for malpractice actions based on breach of contract is even broader than Florida's statute. Louisiana recognizes a contract action only if the attorney guarantees a specific result. However, the Court does not find a strong public policy behind this rule of law. In fact, until the *Cherokee* decision in 1983, the Louisiana Supreme Court affirmed decisions which held that a malpractice action against an attorney gives rise to both a tort and a contract action. *Cherokee*, 428 So.2d at 998. The basis for the decision in *Cherokee* was that, conceptually, an action for legal malpractice is a tort. Though this action is time barred under Louisiana's one year prescriptive period, Louisiana's interest against the

filing of stale claims is not strong enough to overcome Florida's more significant relationship to the parties and the events surrounding this claim.

Accordingly, plaintiffs may assert a malpractice action for breach of contract under Florida law against Bernard Sacks and the law firm of Sacks & Basch. The Court believes that this decision is consistent with the choice of law analysis under the Restatement Second as set forth in *Brinkley & West, Inc. v. Foremost Insurance Company,* 499 F.2d 928 (5th Cir.1974).

**B. JOHN MASSICOT, ESQ. AND SILVESTRI & MASSICOT**

■ The Court finds that a Louisiana choice of law analysis weighs in favor of applying Louisiana law to plaintiffs' contract claim against John Massicot and the firm of Silvestri & Massicot. Under the analysis set forth in section 6(2) of the Restatement Second, Louisiana has a more significant interest in this malpractice claim than do Florida or Pennsylvania. Plaintiffs' claims against the Massicot defendants arose in Louisiana. Neither John Massicot nor Silvestri & Massicot signed the contract which Bernard Sacks mailed to Manuel Santos in Florida, nor did they solicit Santos's services in Florida. Rather, virtually all of the legal services rendered by John Massicot and Silvestri & Massicot were performed in Louisiana where the lawsuit which forms the basis of the malpractice action was tried and where the Massicot defendants are engaged in the full-time practice of law. Finally, Louisiana has an interest in applying its laws to malpractice claims against resident attorneys who are admitted to the Louisiana bar and render legal services in Louisiana.

Florida and Pennsylvania do not have a greater interest than Louisiana in plaintiffs' contract claim against the Massicot defendants. The Massicot defendants' only contact with Florida regarding this claim is that John Massicot telephoned and mailed letters to plaintiffs in Florida and went to Florida to participate in the deposition of Manuel Santos. Though Florida has an interest in protecting its residents from

legal malpractice, the Massicot defendants' contacts with Florida regarding this malpractice claim are so slight that Florida cannot exercise personal jurisdiction over these defendants. The only contact the Massicot defendants have with Pennsylvania regarding this claim is that Silvestri & Massicot is listed as "Of Counsel" on the Sacks & Basch letterhead.

The foregoing analysis demonstrates that Louisiana has a more significant interest in the contract claim against the Massicot defendants and that applying Louisiana law to this contract claim protects the justified expectations of the parties. The Court finds this ruling consistent with section 6(2) of the Restatement Second as analysed in *Brinkley & West, Inc. v. Foremost Insurance Company,* 499 F.2d 928 (5th Cir. 1974).

**III. MOTION OF DEFENDANTS, JOHN MASSICOT AND SILVESTRI & MASSICOT, TO DISMISS AND FOR JUDGMENT ON THE PLEADINGS**

John Massicot and Silvestri & Massicot move to dismiss plaintiffs' tortad contract actions for legal malpractice. The Massicot defendants allege that plaintiffs' tort action is barred by the Louisiana one year prescriptive period and that plaintiffs' complaint fails to state a claim in contract.

■ Louisiana choice of law views statutes of limitations as a procedural rule. *Scharff v. Cameron Offshore Services, Inc.,* 475 F.Supp. at 50. Thus, a Federal District Court in Louisiana must apply Louisiana's prescriptive periods in a diversity action. *Id.* Under Louisiana law, legal malpractice actions sounding in tort are governed by a one year prescriptive period. *Cherokee Restaurant,* 428 So.2d at 999. However, if the malpractice action is based on breach of contract, the plaintiff has ten years to file a claim. *Id.;* La.Civ.Code Art. 3499.

■ Prescription commences when the plaintiff has actual or constructive knowledge of the tortious act, the damage, and the causal relation between the two. *Hero Lands Company v. Borello,* 459 So.

2d 658 (La.App. 4th Cir.1984), *writ denied,* 462 So.2d 651 (La.1985). Manuel Santos was told on October 25, 1985 that he might have a legal malpractice claim against his attorneys. Plaintiffs filed this action on February 18, 1987. Thus, plaintiffs' tort action for legal malpractice has pre-scribed.[9] However, plaintiffs' contract ac-tion was commenced within the prescriptive period.[10]

To maintain a contract action for legal malpractice under Louisiana law the plain-tiff must allege that the attorney guaran-teed that a specific result would be achieved or that the attorney agreed to do certain work and did nothing whatsoever. *Cherokee Restaurant,* 428 So.2d at 999. Plaintiffs do not allege that John Massicot guaranteed a specific result and, clearly, he performed work on the case. Therefore, plaintiffs' complaint fails to state a claim in contract against the Massicot defendants.

Accordingly,

IT IS ORDERED that:

(1) The motion of plaintiffs, Judith and Manuel Santos, to transfer is DENIED;

(2) The motion of defendants, John Mas-sicot and Silvestri, Marino & Massicot, to dismiss is GRANTED.

(3) Plaintiffs' malpractice action against defendants, Bernard Sacks and Sacks & Basch, shall be governed by Florida law.

---

9. The Court believes that Plaintiffs' tort claim has prescribed were this action tried in Pennsyl-vania or Florida. Pennsylvania courts apply the statute of limitations of the forum. *Jones & Laughlin Steel v. Johns–Manville Sales,* 626 F.2d 280, 290, n. 23 (3rd. Cir.1980). The legislative exception to this rule is found in Pennsylvania's "borrowing statute," which provides that when a cause of action arose in another state whose laws forbid the maintenance of the action be-cause of lapse of time, no action shall be main-tained in Pennsylvania. The Pennsylvania bor-rowing statute defines a cause of action as aris-ing "where as well as when the final significant event that is essential to a suable claim occurs." *Mack Trucks, Inc. v. Bendix–Westinghouse Auto-motive Air Brake Company,* 372 F.2d 18, 20 (3rd Cir.1966); *See also Jones & Laughlin Steel,* 626 F.2d at 290, n. 23. Plaintiffs filed this action within the two year statute of limitations appli-cable to legal malpractice actions brought in trespass, 42 Pa.Cons.Stat. § 5524(2). Though the Court is not familiar with the Pennsylvania jurisprudence on this issue, it appears that as to all defendants, the place where the final signifi-cant event occurred was Louisiana, as that is where the personal injury claim was filed and subsequently dismissed. Therefore, a Pennsyl-

vania court would apply Louisiana's one year statute of limitations period.

The Court believes that a court in Florida would also apply Louisiana's one year prescrip-tive period. Florida considers statutes of limita-tions a procedural matter governed by the law of the forum. Though Florida allows two years to file a tort claim for legal malpractice, Fla. Stat. § 95.11(4)(a) (1986), Florida also has a borrowing statute identical to Pennsylvania's. *See* Fla.Stat. § 95.10 (1986). Under Florida law, " 'a cause of action sounding in tort arises in the jurisdiction where the last act necessary to es-tablish liability occurred.' " *Calhoun v. Grey-hound Lines, Inc.,* 265 So.2d 18, 21 (Fla.1972), quoting Ester, *Borrowing Statutes of Limitation and Conflict of Laws,* 15 U.Fla.L.Rev. 33, 47 (1962). Thus, a Florida court would apply Loui-siana's one year statute of limitations to the tort action.

10. Plaintiffs' contract claim was also timely filed under Pennsylvania and Florida law. Pennsylvania allows six years to file a contract claim for legal malpractice. 42 Pa.Cons.Stat. § 5524(2). Florida allows two years. Fla.Stat. § 95.11(4)(a) (1986).