**GULF ATLANTIC TRANSPORT COMPANY, et al., Plaintiffs,**

v.

**OFFSHORE TUGS, INC., and Bruce Bros. Towing, Inc., Defendants.**

No. 89–357–Civ–J–12.

United States District Court, M.D. Florida, Jacksonville Division.

March 26, 1990.

---

824

Robert B. Parrish, and James F. Moseley, Jacksonville, Fla., for plaintiffs.

Joseph Milton, and Harvey L. Jay, Jacksonville, Fla., for defendants.

### ORDER GRANTING MOTIONS TO DISMISS OR TRANSFER AND TRANSFERRING THIS CAUSE TO THE EASTERN DISTRICT OF LOUISIANA

MELTON, District Judge.

This cause is before the Court upon Motions to Dismiss the Plaintiffs' Amended Complaint, filed herein on July 11, 1989, by defendants Offshore Tugs, Inc., and Bruce Brothers Towing, Inc. Both defendants allege that the complaint should be dismissed because the Court does not have personal jurisdiction over them. Since defendants note in their motions that the Court may transfer this action to any district where venue is proper, pursuant to 28 U.S.C. § 1406(a), the Court construes the motions as seeking dismissal or, in the alternative, transfer. Plaintiffs filed a memorandum in opposition to defendants' motions on December 5, 1989. Affidavits relating to the

instant motions were filed herein on July 11, 1989, by defendants, and on December 5, 1989, by plaintiffs. On January 29, 1990, the Court heard oral argument on the motions. For the reasons set forth below, the motions will be granted and this cause will be transferred to the United States District Court for the Eastern District of Louisiana.

The Court applies the familiar standards for evaluating the complaint for purposes of a motion to dismiss. The factual allegations of the complaint are accepted as true, although legal conclusions couched as factual allegations are not. *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 2944, 92 L.Ed.2d 209 (1986). The complaint is construed in the light most favorable to plaintiffs, and a claim will not be dismissed "unless it appears beyond doubt that [plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957).

Whether the Court has personal jurisdiction over defendants is a question which requires the application of Florida law. The Supreme Court of Florida recently provided the following guidance:

> Initially, the plaintiff may seek to obtain jurisdiction over a nonresident defendant by pleading the basis for service in the language of the statute without pleading the supporting facts. Fla.R.Civ.P. 1.070(i); *Jones v. Jack Maxton Chevrolet, Inc.,* 484 So.2d 43 (Fla. 1st DCA 1986). By itself, the filing of a motion to dismiss on grounds of lack of jurisdiction over the person does nothing more than raise the legal sufficiency of the pleadings. *Elmex Corp. v. Atlantic Fed. Savings & Loan Ass'n,* 325 So.2d 58 (Fla. 4th DCA 1976). A defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of minimum contacts must file affidavits in support of his position. The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained. *Elmex Corp.*

*Venetian Salami Co. v. Parthenais,* 554 So.2d 499, 502 (Fla.1989). Therefore, in resolving the instant motions, the Court must carefully analyze the Amended Complaint and the parties' affidavits.

■ Plaintiffs have alleged in their Amended Complaint that defendants are subject to the personal jurisdiction of this Court pursuant to Florida Statutes §§ 48.-193(1)(a) and (g), 48.193(2), 48.181(1) and 48.181(3).[1] At oral argument, plaintiffs acknowledged that personal jurisdiction pursuant to § 48.193(1) or (2) is only available if defendants are personally served with process. *See* Fla.Stat. § 48.193(3) (persons subject to jurisdiction pursuant to § 48.193 may [shall] be personally served); *Blackmon v. Blackmon,* 487 So.2d 1131, 1131 (Fla.Dist.Ct.App.1986) ("service under section 48.193(1) may be made only by personal service"); *Nettles v. White,* 439 So.2d 1048, 1049 (Fla.Dist.Ct.App.1983) ("personal service of process must be perfected upon nonresidents subject to Florida's long arm jurisdiction [§ 48.193]"); *Underwood v. University of Kentucky,* 390 So.2d 433, 434 (Fla.Dist.Ct.App.1980) ("For service to be effective under Section 48.193, the defendant must be *personally* served out-of-state pursuant to 48.194....").

Since defendants were not personally served, "jurisdiction could not have been acquired via Section 48.193." *Underwood,* 390 So.2d at 434. In this case defendants were served pursuant to Fla.Stat. § 48.161, which provides for substituted service of process on nonresidents. Therefore, if this Court has personal jurisdiction over defendants, jurisdiction must arise from the other alleged bases for personal jurisdiction, Fla.Stat. §§ 48.181(1) or 48.181(3), and not from § 48.193.

Fla.Stat. § 48.181 states, in relevant part, the following:

> (1) The acceptance by ... foreign corporations ... of the privilege extended by law to nonresidents ... to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, consti-

1. The latter two sections were added by *ore tenus* motion during oral argument.

tutes an appointment by the ... foreign corporations of the Secretary of State of the state as their agent on whom all process in any action or proceeding against them ... arising out of any transaction or operation connected with or incidental to the business or business venture may be served....

(3) Any ... corporation which sells, consigns, or leases by any means whatsoever ... personal property ... to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

In order to establish personal jurisdiction over defendants in this case, plaintiff must prove the elements of either § 48.181(1) or § 48.181(3).

As set forth in the quoted text above, the elements of § 48.181(1) include the following: first, defendants either accepted the privilege to operate, conduct, engage in, or carry on their business in Florida; *or* defendants accepted the privilege to have an office or agency in Florida; and second, this action arises out of a transaction or operation connected with or incidental to defendants' business activities or office in Florida. If plaintiff makes such proof, valid service was made on the Secretary of State.

Proof of § 48.181(3) requires proof that (1) defendants sold, consigned, or leased personal property; (2) to any person, firm, or corporation in Florida. Such proof leads to the conclusive presumption that defendants' business activities are substantial enough to permit personal jurisdiction over defendants generally.

The first place that allegations of personal jurisdiction should appear is, of course, in the Amended Complaint. In the Amended Complaint, plaintiff Gulf Atlantic Transport Company ("GATCO"), a Florida corporation with its principal place of business in Jacksonville, alleges that it was the bareboat charterer of the barge ANTILLES.

Plaintiff Fireman's Fund Insurance Company ("FFIC") insured the barge and paid the insured for its losses when the barge broke away during towing and became stranded on an island off the north coast of Haiti.

Defendant Offshore Tugs, Inc. ("Tugs") is allegedly a Louisiana corporation "engaged in a business or business venture in this state, as per, *inter alia*, its agreement with GATCO, and its substantial and not isolated activity within this state." Amended Complaint at 6. Tugs allegedly chartered to GATCO the tug LADY IDA. Defendant Bruce Bros. Towing, Inc. ("Bruce Brothers"), is a Louisiana corporation which allegedly "engaged in a business or business venture in this state, as per, *inter alia*, its agreement with GATCO, and its substantial and not isolated activity within this state." Amended Complaint at 7. The tug LADY IDA was owned by defendant Bruce Brothers and chartered by Bruce Brothers' agent, Offshore Tugs, Inc. *See* Exhibit 3 (Description of the Tug LADY IDA) to the Affidavit of Frederic Sandberg dated August 21, 1989 ("Sandberg Affidavit"), attached to Plaintiffs' Memorandum in Opposition to Defendants' Motions as Exhibit 1.

GATCO allegedly entered into a written agreement with Tugs, on behalf of Tugs and Bruce Brothers. The place of contracting and the complete terms of the agreement are not identified in the Amended Complaint. A copy of the alleged agreement was not attached to the Amended Complaint or the original complaint. Allegedly pursuant to the agreement, the barge was being towed by Bruce Brothers' tug LADY IDA from Puerto Rico to Mobile, Alabama. Amended Complaint at 3.[2] The barge broke away and was stranded during high winds and heavy seas. Plaintiffs allege causes of action against defendants for negligence and breach of implied warranty of workmanlike service.

There are no specific factual allegations in the Amended Complaint regarding defendants' ties to Florida. In fact, as defendants have noted, the only allegations relat-

---

**2.** Or vice versa: from Mobile, Alabama, to Puer- to Rico. Sandberg Affidavit at 2.

ing to personal jurisdiction are the conclusory statements that defendants are subject to personal jurisdiction, ¶ 3; engaged in business in Florida, ¶¶ 6 and 7; had an agreement with plaintiff GATCO, *id.;* and engaged in substantial activity in Florida, *id.* Since defendants have challenged by affidavits plaintiffs' allegations of personal jurisdiction, plaintiffs must prove by affidavit, *see Venetian Salami, supra,* "sufficient facts for a Florida court to exercise jurisdiction over a non-consenting, non-resident Defendant." *W.C.T.U. Railway Co. v. Szilagyi,* 511 So.2d 727 (Fla.Dist.Ct.App. 1987); *Hartman Agency, Inc. v. Indiana Farmers Mutual Insurance Co.,* 353 So.2d 665, 666 (Fla.Dist.Ct.App.1978).

Florida's long arm statutes must be strictly construed. *City Contract Bus Service, Inc. v. Woody,* 515 So.2d 1354, 1356 (Fla.Dist.Ct.App.1987); *Chase Manhattan Bank, N.A. v. Banco Del Atlantico,* 343 So.2d 936, 937 (Fla.Dist.Ct.App. 1977). Parties seeking to invoke the long arm statute must bring themselves clearly within the language of the statute in order to render the substituted service of process effective against the defendant. *Id.* A plaintiff who attempts to serve under Fla. Stat. § 48.181 must allege or prove the necessary prerequisites to securing personal jurisdiction as specified in the statute. *Firestone Steel Products Co. of Canada v. Snell,* 423 So.2d 979, 980 (Fla.Dist.Ct.App. 1982).

The affidavits filed by defendants are very thorough. In the affidavit by Charles Bruce, President of defendant Bruce Brothers, filed with said defendant's motion, Mr. Bruce states that his company maintains its registered office and principal place of business in Cut Off, Louisiana, in the parish of Lafourche. According to 28 U.S.C. § 98, said parish is within the jurisdiction of the United States District Court for the Eastern District of Louisiana. Mr. Bruce states that Bruce Brothers never did any of the following *in Florida:*

(1) became licensed to transact business;

(2) sold any real, personal or intangible property;

(3) advertised any property, product or service in the past five years;

(4) maintained any subsidiaries or affiliates;

(5) paid for a telephone or established a telephone number;

(6) maintained a bank account;

(7) made a loan application or received a loan;

(8) owned any interest in real, personal or intangible property;

(9) was sued in any other action in the last five years;

(10) sued any person or corporation in the last five years;

(11) purchased any interest in any Florida corporation in the last five years;

(12) docked any vessel owned by Bruce Brothers in any port in Florida in the last five years;

(13) anchored any vessel owned by Bruce Brothers within five nautical miles of the coast of Florida in the last five years;

(14) engaged in any business or business venture in the last five years;

(15) maintained any office or business operation;

(16) maintained any accounts or records;

(17) stored goods or other business supplies; or

(18) incurred bills or financial obligations which are still pending.

Additionally, Mr. Bruce states that no officer, director, employee, or agent performs any function in Florida; all meetings of the board of directors take place in Louisiana; the alleged agreement which is the subject of this suit was not entered into in Florida;[3] no activity at issue in this case has

---

**3.** Plaintiffs claim that Florida is the place of contracting because a telex from Tugs to GATCO was considered to be an "offer" by plaintiffs which they allegedly "accepted" and returned to Tugs. It is at least arguable that the telex was an "invitation to make an offer" and GATCO's signature on the telex and return of the telex to Tugs was the making of the "offer" to Tugs. Tugs then arguably "accepted" the offer upon

any nexus with Florida; the company did not actively solicit or pursue any business opportunities within Florida at any times material to this case; and the alleged agreement involving towing services from San Juan, Puerto Rico, to Mobile, Alabama, did not require any acts to be performed in Florida.

In the affidavit by Francis E. Gremillion, General Manager of defendant Offshore Tugs, Inc., filed with said defendant's motion, Mr. Gremillion states that his company maintains its registered office and principal place of business in Raceland, Louisiana, which is, like Bruce Brothers, in the parish of Lafourche and therefore within the jurisdiction of the United States District Court for the Eastern District of Louisiana. Mr. Gremillion states in a list similar to the list in Mr. Bruce's affidavit, that his company has the same lack of contacts with Florida as does Bruce Brothers.

■ As set forth in *Venetian Salami*, *supra*, the burden is on plaintiffs to show that this Court may exercise personal jurisdiction over defendants because defendants have pointed out and challenged the general allegations in the Amended Complaint and have filed detailed affidavits. Plaintiffs must prove by affidavit, *see Venetian Salami*, 554 So.2d at 502, that the requirements of doing business and connexity, pursuant to Fla.Stat. § 48.181, exist. *Santos v. Sacks*, 697 F.Supp. 275, 282 (E.D.La. 1988). The "connexity" requirement refers to the requirement that there be some nexus or connection between the business that is conducted in Florida and the cause of action alleged. *Id.* at 280; *City Contract Bus Service, Inc. v. Woody*, 515 So.2d 1354, 1356 (Fla.Dist.Ct.App.1987).

The Florida Supreme Court provided a thorough review of a personal jurisdiction analysis in *Venetian Salami Company*, *supra*. The following procedure applies: "[T]wo inquiries must be made. First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient 'minimum contacts' are demon-

strated." *Venetian Salami*, 554 So.2d at 502 (quoting *Unger v. Publisher Entry Service, Inc.*, 513 So.2d 674, 675 (Fla.Dist. Ct.App.1987)).

■ The "minimum contacts," of course, must be contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Venetian Salami*, 554 So.2d at 501–502; *Osborn v. University Society, Inc.*, 378 So.2d 873, 874 (Fla.Dist.Ct.App. 1979). To assert personal jurisdiction over a nonresident defendant, the defendant's conduct in connection with the forum state must be "such that he should reasonably anticipate being haled into court there." *Venetian Salami*, 554 So.2d at 500 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).

■ The primary concern of the Court in regard to the exercise of personal jurisdiction, is the relationship among the defendant, the forum and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). A defendant's unilateral contact with the state is not enough to establish minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). There must be "some act by which the Defendant purposely avails [himself or herself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).

■ "Thus, under a given factual situation, even though a nonresident may appear to fall within the wording of a long arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state." *Venetian Salami*, 554 So.2d at 502; *Osborn*,

receipt in Louisiana. *See* Farnsworth, *Contracts* 126–27 (1982).

378 So.2d at 874; *Harlo Products Corp. v. Case Co.*, 360 So.2d 1328, 1329 (Fla.Dist.Ct. App.1978). Determining whether "minimum contacts" exist requires an analysis of the specific facts and circumstances of a case. *See Venetian Salami*, 554 So.2d at 500. The determination must not depend upon the application of "mechanical" tests or on "conceptualistic ... theories of the place of contracting or of performance." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–9, 105 S.Ct. 2174, 2185–86, 85 L.Ed.2d 528 (1985); *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159–60; *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 316, 63 S.Ct. 602, 604, 87 L.Ed. 777 (1943); *Venetian Salami*, 554 So.2d at 500.

In the context of a contract which was allegedly defendant's contact with the forum, the Supreme Court held, "It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposely established minimum contacts within the forum." *Burger King*, 471 U.S. at 478–479, 105 S.Ct. at 2185–2186; *Venetian Salami*, 554 So.2d at 501; *Hoopeston Canning Co.*, 318 U.S. at 316, 63 S.Ct. at 605.

■ In the opposition to the instant motions, plaintiffs allege a variety of contacts between defendants and Florida. A representative of Tugs, Peter Finstad, allegedly initiated contact with Frederic Sandberg of GATCO by a telephone call from Golden Meadows, Louisiana, to GATCO's principal place of business in Jacksonville, Florida, on January 12, 1988. Mr. Sandberg stated in his affidavit dated August 21, 1989, that at the time he received the call from Tugs he had already contacted several tug owners and was pursuing various deals to replace a tug that had broken down. In the phone conversation, Tugs suggested to GATCO that it had a tug in which GATCO might be interested. After GATCO requested particulars about the boat and price, Tugs suggested that it would send a telefax to GATCO with details about the tug. Sandberg Affidavit at 2. The telefax was sent to GATCO in Jacksonville and received on the same date as the telephone call.

Mr. Bruce of Bruce Brothers and Mr. Finstad of Tugs reviewed the terms for the charter of the tug prior to reaching an agreement with GATCO. After further negotiations by phone,[4] a telex confirming the parties' verbal agreement was sent from Louisiana to Mr. Sandberg in Jacksonville on January 13, 1988. Mr. Sandberg signed the telex and returned it by telex to Mr. Finstad in Louisiana.

Plaintiffs state that "as a result of these communications, the defendants entered into a contract *in Florida* to hire the vessel LADY IDA." Memorandum in Opposition at 3 (emphasis added).[5] Whether a contract was entered into at all, or in Florida, or in Louisiana is not conclusive for the purposes of determining whether personal jurisdiction over these defendants exists. As noted above, the "place of contracting" as a test for determining the existence of personal jurisdiction has been abandoned in favor of a consideration of relationship factors like the prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. *Burger King*, 471 U.S. at 478–479, 105 S.Ct. at 2185–86; *Venetian Salami*, 554 So.2d at 501.

Even if GATCO's signature on the telex from defendants was an acceptance that formed a contract, the formation of the contract in Florida does not automatically lead to a finding that, after substituted service, a Court in Florida would have personal jurisdiction over defendants pursuant to § 48.181. Plaintiffs rely on *DeMarco v. Cayman Overseas Reinsurance Assoc., Ltd.*, 460 So.2d 547, 549 (Fla.Dist.Ct.App. 1984), in which the Court noted that, "[t]he single act of signing a contractual agree-

---

**4.** There is no evidence in the record that any representative of Tugs or Bruce Brothers was in Florida at any time. All negotiations appear to have transpired by telephone and telex.

**5.** *See* n. 3, *supra*.

ment within the forum state *may* constitute sufficient minimum contacts to sustain the exercise of in personam jurisdiction over a nonresident *in subsequent suit for breach of the agreement.*" (Emphasis added). The court in *DeMarco* found that personal jurisdiction existed after considering "the facts presented" and finding "ample support for the trial court's determination that the appellant had accepted the privilege of engaging in a business or business venture in this state...."

*DeMarco* is distinguishable from the instant case. First, the court noted that the signing of a contract *may*, not shall, constitute sufficient minimum contacts. Based on the specific facts of the instant case, defendants' contacts with the forum are so tenuous that, even if contracting took place here, this is not a case in which the mere act of signing a contract could fairly result in personal jurisdiction over defendants. Second, the contract in *DeMarco* involved performance *in* Florida: the guarantor was a resident of Florida at the time that he signed a guarantee in Florida agreeing to be personally liable for the obligations of another. The alleged contract in the instant case involved performance outside of Florida. As mentioned, *supra*, § 48.181(1) requires that a defendant operate, conduct, engage in, or carry on a business or business venture *in* the state. Finally, the *DeMarco* court noted that the single act of contracting may be sufficient when the subsequent suit is for *breach of the agreement.* The causes of action in the instant case are based on negligence and breach of warranty for workmanlike performance. Plaintiffs are not suing on the contract itself.

In the instant case there is no dispute that the contract provided for towing services in locations other than Florida. The only contact with Florida arguably required by the contract was the requirement for the tug to make daily position reports to GATCO.[6] Plaintiffs allege that contact between the tug and defendants was made on the tug's single sideband radio. It is also undisputed that this cause of action did not arise from the breach of defendants' promise to make daily position reports to GATCO in Jacksonville.

Plaintiffs allege that defendants' negligence resulted in the loss of their barge and they were, therefore, damaged in Florida. Of course, the fact that the financial impact of a loss was felt at the main office in Florida is not very persuasive in assessing whether personal jurisdiction exists over Louisiana defendants for a wrong allegedly committed in a sea lane near Haiti. Plaintiffs alleged no other contact between defendants and Florida which specifically relates to the subject contractual relationship.

There are no allegations of contacts between Bruce Brothers and Florida aside from the allegations discussed above. Plaintiffs allege, however, that Tugs also had contacts with Florida unrelated to the instant case. The only other business dealings identified by plaintiffs which allegedly involve Tugs and someone or some place in Florida are the following: (1) in 1986, Tugs arranged for towage to Tampa and Miami for a Texas company; (2) in the fall of 1987, Tugs brokered a job with Gulf Tampa Drydock which was to be performed in Florida; (3) also in 1987, tugs brokered a job in which a barge was to be towed to Miami; (4) Tugs was involved when a barge was in distress in the Gulf of Mexico and the owner of the barge was in Florida; and (5) since September 1988 Tugs has been involved in an operation for Ocean Line of North Florida, which operates a barge line between Fernandina Beach, Florida, and San Juan, Puerto Rico.

To summarize defendants' alleged contacts with Florida, both defendants were involved in telephoning GATCO in Florida; sending telex messages, allegedly including an offer for towing services, to Florida;

---

**6.** There is no dispute that position reports were required. The telex agreement does not mention the position report requirement however. Also, whether position reports had to be made directly to GATCO in Jacksonville, Florida, every day, or whether the reports could be or were made to GATCO agents or representatives in places outside of Florida and relayed to GATCO in Florida is unclear.

being parties to a contract for towing services which was negotiated by telephone and allegedly accepted in Florida; sending daily reports to Florida; contacting GATCO by radio in Florida; and by allegedly being responsible for a loss which had a financial impact on GATCO in Florida. Additionally, defendant Tugs brokered deals involving vessels en route to Florida, or from Florida, or vessels which were owned by persons in Florida.

Having carefully considered the entire record and reviewed the law cited by the parties and other relevant law, the Court has concluded that it does not have personal jurisdiction over these defendants based on the facts and circumstances of this case. For personal jurisdiction pursuant to Fla. Stat. § 48.181(1), plaintiffs must show that defendants accepted the privilege to operate, conduct, engage in, or carry on a business or business venture in Florida. The record does not support such a finding. Plaintiffs failed to prove that defendants maintained a "business" in Florida. Although the towage agreement was arguably a "business venture," defendants did not operate, conduct, engage in, or carry on the business venture *in* Florida. All performance pursuant to the towage agreement was in places other than in Florida.

Even if the Fernandina Beach to San Jose operation was deemed sufficient evidence of accepting the privilege of doing business in Florida, the operation does not involve defendant Bruce Brothers at all and the instant case does not arise from that operation, as is required by Fla.Stat. 48.181(1).

For personal jurisdiction pursuant to Fla. Stat. § 48.181(3), plaintiffs must prove that defendants sold, consigned, or leased personal property to any person, firm, or corporation in Florida. Plaintiffs argue that the towage agreement was a "lease" arrangement. Defendants categorically state that Fla.Stat. 48.181(3) does not apply. The facts indicate that the agreement was for the charter of a tug to transport a GATCO barge. The charter arrangement, which provided for defendants' crew to operate the tug and control the barge, is clearly not simply a "lease." Plaintiffs have failed to prove that the charter agreement is the same as a lease for the purposes of § 48.181(3). Also, execution of the charter was not to be *in* Florida, but in sea lanes between Alabama and Puerto Rico, and between Puerto Rico and Texas. Even if the charter was a "lease" it is not clear that the statute applies to the lease of property which will not be used in Florida, although one of the contracting parties happens to be based in this state.

The allegations that Tugs has other contacts with Florida do not remedy the lack of personal jurisdiction as to defendant Tugs. "Where a nonresident defendant is not qualified to do business in the state, the party attempting to invoke the jurisdiction of the Florida courts under § 48.181 must show the requirements of doing business *and connexity*." *Santos,* 697 F.Supp. at 282 (emphasis added); *Rose's Stores, Inc. v. Cherry,* 526 So.2d 749, 752 (Fla.Dist.Ct.App.1988); *Polskie Linie Oceaniczne v. Seasafe Transport A/S,* 795 F.2d 968, 971 (11th Cir.1986). Personal jurisdiction pursuant to § 48.181 does not exist over a nonresident defendant if the cause of action brought by plaintiffs is not premised on acts or omissions that were performed or were to be performed *in* Florida. *Santos,* 697 F.Supp. at 282 (emphasis added).

Finally, as discussed *supra,* plaintiffs must prove that defendants' contacts with this forum are constitutionally sufficient. This has not been done. Of course, in view of the Court's finding that plaintiffs have failed to prove a statutory basis for personal jurisdiction over defendants, it is unnecessary to engage in federal due process analysis. As an alternative ground for its ruling, however, the Court has reviewed relevant law and the facts of this case and has determined that, even if a basis for personal jurisdiction were available under Florida law, assertion of personal jurisdiction over defendants herein would clearly "offend traditional notions of fair play and substantial justice." *See International Shoe,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The heavy emphasis on defendants' telephone, telex and radio contacts to GATCO in Florida from outside of Florida do not amount to "minimum contacts" with this forum based on the facts of this case. *See Groome v. Feyh*, 651 F.Supp. 249, 256 (S.D. Fla.1986) (telephone calls and mailings did not constitute sufficient contacts); *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985) (prior negotiations are generally insufficient standing alone to amount to purposeful activity).

As noted above, aside from the phone calls, telexes, and radio calls to Florida, plaintiff relies on the allegation that the contract was formed in Florida by GATCO's acceptance of the telexed "offer." "The [Supreme] Court long ago rejected the notion that personal jurisdiction might turn on ... conceptualistic ... theories of the place of contracting or performance." *Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185–86 (quoting *Hoopeston Canning Co.*, 318 U.S. at 316, 63 S.Ct. at 605). Concentrating on the parties' prior negotiations, the contemplated future consequences, the terms of the towage agreement, and the parties' actual course of dealing, *id.*, however, there is no basis to find that defendants' conduct in connection with Florida is "such that [defendants] should reasonably anticipate being haled into court" here. *See World–Wide Volkswagen Corp.*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

The record indicates that the towage relationship between GATCO and defendants was a one-time relationship. The parties had never contracted before and entered into the agreement in the instant case because GATCO was in a bind. An agreement like the one that was reached between GATCO and defendants was sought and arguably initiated by Mr. Sandberg of GATCO, who "talked to several tug owners, and was pursuing various deals" to find a tug to replace the one that broke down. Sandberg Affidavit at 2. After Sandberg made requests of tug owners and brokers, Tugs was informed of the problem and a representative of Tugs contacted GATCO.

According to the record, the call from Tugs was not a "solicitation." It is clear that GATCO was soliciting assistance from tug owners and brokers, and Tugs responded to the call. Plaintiffs cited at least one other instance where Tugs came to the assistance of a barge owner in trouble: when Tugs assisted a barge in distress in the Gulf of Mexico. *See* Memorandum in Opposition at 5. Based on the entire record and relevant law, the Court finds that the quality and nature of defendants' contacts with Florida could be characterized as so random, fortuitous, or attenuated that "it cannot fairly be said that [defendants] 'should reasonably anticipate being haled into court'" in Florida. *See Burger King*, 471 U.S. at 485–86, 105 S.Ct. at 2189–90.

Since defendant Bruce Brothers' contacts with Florida were only the insignificant contacts related to the subject towage agreement, the maintenance of this suit against it in this forum would clearly "offend traditional notions of fair play and substantial justice." *International Shoe, supra*. The decision is a little closer regarding defendant Tugs because of its ongoing relationship with a North Florida shipping line. By analyzing the relationship between Tugs, this forum, and the litigation, *see Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977), however, it is clear that Tugs' contacts with Florida are not substantial enough to subject Tugs to suit in Florida for an unrelated cause of action. Aside from the amount of money billed and the amount of Tugs' commission from the relationship with Ocean Line of North Florida, the record does not reflect Tugs specific role in the relationship. Tugs may be performing brokerage services from Louisiana for Ocean Line's operations in Florida, with negligible, if any, actually "contacts" in Florida.

For all of the foregoing reasons, and upon careful review of relevant law and the entire file, the Court finds that defendants' motions should be granted. Since personal jurisdiction over defendants is lacking, the Court is faced with two options: to dismiss without prejudice or to transfer pursuant to 28 U.S.C. § 1406(a). Although defendants did not specifically request transfer,

both defendants stated, "Pursuant to 28 U.S.C. § 1406(a), this Court may transfer this action to any district where venue is proper." Motions to Dismiss at 2.

Title 28, United States Code, Section 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if in the interest of justice, transfer such case to any district or division in which it could have been brought.

Since this is an admiralty action, the venue and personal jurisdiction analyses merge. *Peitsch v. Regency Cruises, Inc.,* 664 F.Supp. 362, 363 (N.D.Ill.1987). Therefore, because there is no personal jurisdiction over defendants in this district, venue is improper here. This case could clearly have been brought in the Eastern District of Louisiana, the district in which both defendants have their registered office and principal place of business. Such a transfer would be in the interests of justice because a dismissal may prejudice the plaintiffs' ability to maintain this suit and will result in additional expense and inconvenience to all parties herein. Accordingly, this action will be transferred to the United States District Court for the Eastern District of Louisiana.

Upon consideration of the motions, memoranda, entire file and relevant law, and the Court being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED:

1. That the Motions to Dismiss the Plaintiff's Amended Complaint, filed herein on July 11, 1989, by defendants Offshore Tugs, Inc., and Bruce Brothers Towing, Inc., construed to be seeking dismissal or, in the alternative, transfer, are hereby granted; and

2. That, pursuant to 28 U.S.C. § 1406(a), this cause is hereby transferred to the United States District Court for the Eastern District of Louisiana.

DONE AND ORDERED.