**AMERICAN INVESTORS LIFE INSURANCE COMPANY,**
Plaintiff,

v.

**WEBB LIFE INSURANCE AGENCY, INC., and Jack L. Elledge, individually, Defendants.**

**No. 94–8376–CIV.**

United States District Court,
S.D. Florida.

Jan. 26, 1995.

 

Judith A. Ripps, Harnett, Lesnick, Ripps & Kahn, P.A., Boca Raton, FL, for plaintiff.

Leigh E. Dunson, Gunster, Yoakley & Stewart, P.A., West Palm Beach, FL, for defendants.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon the defendants' Motion to Dismiss or Transfer, filed August 1, 1994. The Court heard oral arguments on this fully briefed motion on November 17, 1994.

*Background*

This case presents an interesting question of personal jurisdiction. The underlying dispute involves a breach of contract claim brought by an insurance company against its sales agent. The plaintiff, American Investors Life Insurance Company ("American"), is incorporated in Kansas. Although American sells annuities in many states, its principal place of business is also in Kansas. In 1987–88, American Investors contracted with the Annuity International Marketing Corporation ("AIMCOR"), a Florida corporation, to recruit agents to sell American's annuities. In 1987 Burke & Associates Marketing Company ("Burke Marketing"), an insurance wholesaler/broker employed by AIMCOR, recruited the Defendant Elledge to sell annuities for American. Pursuant to the Managing General Agent Agreement forwarded to the defendants by Burke Marketing, Elledge became a general agent for AIMCOR. Some time later Elledge cancelled his status as an agent for AIMCOR and contracted on behalf of the Defendant Webb Life Insurance Agency ("Webb") to act as an AIMCOR agent.

Allegedly, while acting as an agent for AIMCOR (and indirectly for the plaintiff), the defendants Elledge and Webb wrongfully induced approximately 179 investors to surrender single premium annuity policies written by American. This act forms the basis of the complaint. The defendants now seek to have the complaint dismissed for lack of personal jurisdiction. In the alternative, they seek a transfer to the Western District of North Carolina.

In their motion, memoranda and supporting affidavit, the defendants point out that they are residents of North Carolina and have had minimal contacts with Florida. For instance, the defendants have never conducted or solicited business in Florida and all of the 179 investors mentioned above are North Carolina residents.

In its Opposition to the Defendants' Motion to Dismiss, the plaintiff advances little to contradict the defendants' assertions, but instead relies heavily, as it must, upon a choice of law and venue clause contained in the Managing General Agent Agreement. That clause provides:·

·This Agreement shall be interpreted and enforced in accordance with the laws of the State of Florida and the proper venue to resolve any dispute under this Agreement shall be in Palm Beach County, State of Florida.

*Plaintiff's Memorandum in Opposition to Motion to Dismiss,* Exhibit A, Article 10.

*Whether Personal Jurisdiction Exists Here*

 The case law regarding federal due process and minimum contacts requirements makes clear that a party .can consent to personal jurisdiction before a dispute arises. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 n. 14, 105 S.Ct. 2174, 2181–82 n. 14, 85 L.Ed.2d 528 (1985); *Alexander Proudfoot Company World Headquarters v. Thayer,* 877 F.2d 912, 921 (11th Cir.1989). However, a federal court sitting in diversity can only exercise jurisdiction over "a defendant ... who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located...." Fed.R.Civ.P. 4(k). Furthermore, the Eleventh Circuit has held that a district court sitting in diversity must apply the long-arm statute of the state in which it sits. *Alexander Proudfoot,* at 916–19.

 In assessing whether personal jurisdiction exists "over a nonresident defendant, federal courts must engage in a two-part analysis.... Courts first analyze the jurisdictional problem by looking at the applicable long-arm statute." *Id.* Only if the long-arm statute is satisfied should a court even reach the second step of considering whether the exercise of jurisdiction would controvert the Due Process Clause of the Fourteenth Amendment. Thus, this Court must initially inquire whether the defendants are amenable to service under Florida's long-arm statute.[1]

 Florida's long-arm statute, which must be strictly construed, confers less jurisdiction upon Florida· courts than allowed by the Due Process Clause. *Gulf Atlantic Transport Co. v.· Offshore Tugs, Inc.,* 740

F.Supp. 823, 827 (M.D.Fla.1990); *McRae v. J.D./M.D., Inc.,* 511 So.2d 540, 543 (Fla.1987). Furthermore, "[i]n Florida, conferral of personal jurisdiction clauses are not enforced *unless an independent ground for personal jurisdiction exists under the Florida Long Arm Statute ....*" *Alexander Proudfoot,* 877 F.2d at 18 (emphasis added). In *McRae v. J.D./M.D.,* 511 So.2d at 544, the Supreme Court of Florida, considering a question it felt to be "of great public importance," held that "a contractual choice of forum clause designating Florida as the forum cannot serve as the sole basis for asserting in personam jurisdiction over an objecting, non-resident defendant." Instead, a defendant's conduct must fall under a provision of the long-arm statute. Thus, Florida courts place little weight upon forum selection clauses.

 The above cases dictate that if this Court is to exercise personal jurisdiction over the defendants in this case, it must find an independent basis for jurisdiction under the long-arm statute. The facts here do not support such a finding. In its complaint, the plaintiff fails to allege sufficient facts to establish personal jurisdiction. Instead, it relies entirely upon the forum selection clause contained in the Managing General Agent Agreement. *Verified Complaint,* at 2. Likewise, the affidavits submitted by the parties allege very few connections. with Florida. They are limited to the following:

1. ·The defendant Elledge, on his own behalf and as President of the defendant Webb Life Insurance Agency, signed the Managing General Agent Agreement in North Carolina and returned it to the plaintiff's agent/broker in Clearwater, ·Florida;

2. The defendant Elledge made approximately twelve telephone calls from North Carolina to the plaintiff's agent, Burke Marketing, in Florida to ask about prevailing interest rates;

3. While Burke Marketing had initially contacted the defendant Elledge to recruit

---

1. The parties are in some disagreement about which long-arm provision applies. The defendants assert that Fla.Stat.Ann. Ch. 48.193 controls, while the plaintiff cites Ch. 48.181. The record does not reveal which statute was relied

upon when the plaintiff served the defendants. However, because the language relied upon by the plaintiff is essentially. identical to that cited by the defendants, the Court finds the parties' dispute to be of no significance.

him as an agent for AIMCOR, in 1988 Elledge terminated his agency agreement with AIMCOR and executed a replacement agreement on behalf of Webb.

These contacts are insufficient to establish personal jurisdiction under Florida's long-arm statute. *See e.g., Gulf Atlantic Transport Company v. Offshore Tugs, Inc.*, 740 F.Supp. 823 (M.D.Fla.1990) (non-resident Defendants' alleged contacts in Florida, which included Defendants' telephoning Plaintiff in Florida, sending telex messages, being parties to a contract which was negotiated by telephone and allegedly accepted in Florida, sending daily reports to Florida and contacting the plaintiff by radio in Florida were insufficient to establish personal jurisdiction over non-resident Defendants under Florida's long-arm statute).

The relevant provisions of Florida's long-arm statute provide that a foreign resident will be subject to the jurisdiction of the courts of Florida "for a cause of action arising from the doing of any of the following acts":

(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

\* \* \* \* \* \*

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

\* \* \* \* \* \*

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla.Stat.Ann. Ch. 48.193 (West 1994) (emphasis added).[2]

A feature common to all of these provisions, excepting the general jurisdiction provision, is the requirement that some act have been committed *within Florida*. None of these provisions has been satisfied. The defendants have not carried on any business in Florida and they have no office here. The plaintiff's agent initially contacted the defendants in North Carolina to sell the plaintiff's annuities in North Carolina, and the alleged

---

2. Fla.Stat.Ann. Ch. 48.181 provides:

Service on nonresident engaging in business in state

(1) The acceptance by any person or persons, individually, or associated together as a copartnership or any other form or type of association, who are residents of any other state or country, and all foreign corporations, and any person who is a resident of the state and who subsequently becomes a nonresident of the state or conceals his whereabouts, of the privilege extended by law to nonresidents and others to operate, conduct, engage in, or carry on a business or business venture in the state, or to have an office or agency in the state, constitutes an appointment by the persons and foreign corporations of the Secretary of State of the state as their agent on whom all process in any action or proceeding against them, or any of them, arising out of any transaction or operation connected with or incidental to the business or business venture may be served. The acceptance of the privilege is signification of the agreement of the persons and foreign corporations that the process against them which is so served is of the same validity as if served personally on the persons or foreign corporations.

(2) If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.

(3) Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

*See* F.N. 1, *supra.*

tortious acts occurred in North Carolina. The plaintiff has failed to show that the defendants solicited business in any way in Florida, nor has it shown that they provided any services in Florida. Finally, the defendants performed the contract in North Carolina. Because none of the defendants' activities fall within the purview of any of the above cited provisions, the Court lacks specific jurisdiction under the statute. For these same reasons, general jurisdiction under Fla.Stat.Ann. Ch. 48.193(2) is lacking.

The plaintiff's attempt to establish jurisdiction under subsections (a), (g) and (2) by referring to its own reinsurance arrangement with AIMCOR is unavailing. According to the plaintiff, "[w]hen Defendants contracted with AIMCOR to sell American Investors' annuity policies which, in turn, were to be reinsured by American Investors with Financial Benefit Life Insurance Company, a Florida insurance carrier, the Defendants effectively integrated themselves into a business network which was substantially located in Florida." *Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss,* at 17. As the defendants correctly point out, however,

> [a] closer look at this "business network" reveals that the Defendants had no part in American Investors reinsurance "deal" with its own agent. The affidavit of Plaintiff's own Assistant General Counsel reveals that the reinsurance was no more than the method chosen by American Investors to pay its Florida agent:
>
> > American Investors ... contracted with Annuity International Marketing Corporation (AIMCOR) to recruit qualified agents to sell American Investor's [sic] products.... American Investors compensated AIMCOR by agreeing to reinsure at least 50% of the annuity business written by AIMCOR-recruited agents with Financial Benefit Life Insurance Company ("FBLIC") ... which is an affiliate of AIMCOR.

*Defendants' Reply Memorandum,* at 4, citing *Miller Affidavit,* paragraphs 4–5. The plaintiff has not contradicted the defendants' assertions that they were without knowledge of this arrangement. The plaintiff cannot, by its own conduct, create contacts with Florida on behalf of the defendants.

*Vaughn v. AAA Employment, Inc.,* 511 So.2d 1045 (Fla.Dist.Ct.App.1987) supports dismissal of this case. The facts in *Vaughn* were quite similar to those here. The plaintiff in that case, a Florida resident, sued a Mississippi resident for breach of contract. The defendant had contracted with the plaintiff to operate an employment agency, under the latter's name, in Mississippi. The contract was signed by defendant in Mississippi, then forwarded to and signed by the plaintiff in Florida. The contract was performed entirely in Mississippi. A clause in the contract provided:

> This agreement shall be construed under the laws of the State of Florida and venue for such litigation shall be in Pinellas County, Florida.

*Id.,* at 1046. Following *McRae v. J.D./M.D., Inc., supra,* the court dismissed the case for lack of in personam jurisdiction.

The most troubling point the plaintiff raises is that the forum selection clause contained in the Managing General Agent Agreement would prevent this action from being brought in North Carolina. The plaintiff cites *McNeill v. International Precious Metals Corporation,* 1989 WL 27443 (4th Cir. 1989) (North Carolina case), to support its argument. However, that case did not hold that a district court sitting in North Carolina would invariably enforce a forum selection clause. Instead, "the circuit court instructed the district court to consider, not only the presence of the forum-selection clause, but also the convenience of the witnesses and 'those public-interest factors of systematic integrity and fairness that, in addition to private concerns, come under the heading of "the interest of justice."'" *McNeill, supra, quoted in Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss,* at 16. In light of *McNeill,* it does not seem likely that a federal court in North Carolina would refuse to hear this case if it were dismissed from this Court's docket for lack of personal jurisdiction. Therefore, this Court now follows the opinions in *Vaughn* and *Gulf Atlantic Transport Co., supra,* and concludes that the plaintiff has failed to allege facts

sufficient to support this Court's exercise of personal jurisdiction over the defendants.

Accordingly, having reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that the defendants' Motion to Dismiss or Transfer is **GRANTED** and this case is **DISMISSED** from this Court's federal docket.

**DONE AND ORDERED.**