In the Matter of ARBITRATION BE-TWEEN, Richard W. JOHNS and Sandra C. Johns, Petitioner,

and

TARAMITA, INC. Respondent.

No. 00–7155–CIV.

United States District Court, S.D. Florida.

Feb. 8, 2001.

John J. Tomaselli, Ft. Lauderdale, FL, for petitioners.

Patrick S. Martin, Gulf Breeze, FL, for respondent.

### *ORDER DENYING PETITION FOR ARBITRATION IN THE SOUTH-ERN DISTRICT OF FLORIDA*

GOLD, District Judge.

**THIS CAUSE** is before the court upon the petitioners' petition to compel arbitration (DE # 1) pursuant to the terms of an agreement entered into by the parties in 1999. The respondent opposes this petition by arguing that the court lacks personal jurisdiction or, alternatively, that the court should dismiss the petition on the

basis of the doctrine of *forum non conveniens*. The court has considered the parties' briefs, supporting documents, and the arguments presented by counsel during oral argument, and, for the reasons discussed below, the court denies the petition to compel arbitration in this District, although, as conceded by the parties, arbitration is otherwise appropriate.

## I. Factual Background

The petitioners in this case, Richard W. Johns and Sandra C. Johns, are residents of California, and the respondent, Taramita, Inc., is a corporation with its principal place of business in Puerto Rico.[1] In 1996, the petitioners entered into negotiations with Richard Difede and Jayanne McLaughlin for the charter of the sailing vessel, EAST WIND II, which was owned by the petitioners. *See* Johns Affid. at ¶ 2.[2] Difede and McLaughlin formed the respondent corporation for the purpose of assuming the rights and obligations of the charter.

On October 25, 1996, Difede, acting on behalf of the respondent, prepared and forwarded a draft of the charter agreement to the petitioners. *See* Johns Affid. at ¶ 4. This original draft contained an arbitration provision similar to the one at issue in this case.[3] The relevant language provided, "If the party successfully breaches this arbitration provision, jurisdiction in any subsequent suit will be limited to the U.S. Virgin Islands, and Virgin Islands law will apply with the prevailing party to recover its costs and attorneys' fees." Pet.'s Ex. 1 at ¶ 7. Because the petitioners resided in California, they crossed out the language "the U.S. Virgin Islands, and Virgin Islands" in the above-sentence, and they substituted it with "California, U.S. law and California law." Pet.'s Ex. 1 at ¶ 7. When the respondent received these corrections, it objected to the California forum on the grounds of inconvenience. Over the course of several weeks, the parties continued to negotiate the forum selection clause of the arbitration provision. They finally agreed that any arbitration or litigation would take place in Florida and that Florida law would apply because this forum was mutually inconvenient and neutral. *See* Johns Affid. at ¶¶ 6–9. The parties' finalized 1996 charter agreement reflected this change. The amended provision read, "If the party successfully breaches this arbitration provision, jurisdiction in any subsequent suit will be limited to Florida law and Florida law will apply with the prevail-

---

1. The petitioners do not specify where Taramita, Inc. is incorporated, other than to state that it exists "pursuant to the laws of one of the states or territories of the United States." Pet.'s Pet'n at ¶ 2.

2. In support of their petition to compel arbitration, the petitioners submitted the affidavit of Richard W. Johns, a charter agreement executed on July 2, 1999, a draft of the agreement that was executed in 1996, and various correspondence. In support of their arguments in opposition to this petition, the respondents filed the affidavit of Jayanne McLaughlin and a list of potential witnesses for the arbitration. Because some aspects of Johns's and McLaughlin's affidavits conflict, the court has resolved all factual disputes in favor of the petitioners. *See S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir.2000) ("If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor....") (citations omitted).

3. As will be discussed in more detail, the arbitration provision that is at issue in this case is contained in the parties' agreement of July 2, 1999. Paragraph 18 of that agreement states:

 ARBITRATION: Should dispute arise between the OWNER and the CHARTERER, the matter in dispute shall be referred to three persons, one to be appointed by each of the Parties hereto, and the third by the two (2) so chosen, their decision or any two(2) of them shall be final, and for the purpose of enforcing any award, this Agreement may be made a rule of court, said arbitration to be submitted in ten (10) days after written Notice of Complaint. If the party successfully breaches this arbitration provision, jurisdiction in any subsequent suit will be limited to Florida law and Florida law will apply with the prevailing party to recover its costs and attorney's fees.

ing party to recover its costs and attorneys' fees." Pet.'s Ex. 2 at ¶ 18. Neither party consulted an attorney during the drafting, negotiation, or execution of this agreement.

Prior to the execution of this agreement, the EAST WIND II was berthed in Florida. The respondent's representatives traveled to this state to inspect the vessel, and they took possession of it in Florida to commence the 1996 charter. Johns Affid. at ¶ 13. The terms of the charter agreement were carried out in the U.S. Virgin Islands and Puerto Rico.

The parties continued to operate under the 1996 charter agreement during the remainder of its term, which was thirty months. As the expiration of 1996 charter approached, the petitioners traveled to the Caribbean to inspect the vessel. Upon examining the EAST WIND II, they became concerned about her decaying condition. Although the petitioners gave the respondent the option of renewing their charter agreement, they informed the respondent that they would need to change certain terms relating to maintenance and repairs in order to better protect their interests. *See* Johns Affid. at ¶ 15. The parties agreed to keep the same arbitration clause that governed the 1996 charter agreement. The parties did not retain counsel to assist them in the drafting of their second agreement, which was executed on July 2, 1999.

The charter agreement of July 1999 is the subject of this petition to compel arbitration. The petitioners terminated the 1999 contract under a default clause when they learned that the respondent allegedly had failed to carry out its obligations under the contract.[4] On June 29, 2000, the petitioners demanded arbitration of their claims, and the respondent replied by a letter dated August 9, 2000. Although, at that time, the respondents told the peti-

tioners that they refused to submit to arbitration and would seek resolution of this matter through a jury trial in Puerto Rico, *see* Pet.'s Ex. C, the respondents now state that they do not contest arbitration of the dispute, but only the jurisdiction of this forum. Rather than submit to arbitration in Florida, the respondents seek to arbitrate in Puerto Rico, where they state that most of the witnesses are located. *See* Resp.'s Ex. A (listing names and location of witnesses).

## II. Analysis

### A. Subject Matter Jurisdiction

■■■ The Federal Arbitration Act, 9 U.S.C. § 1 et seq. does not confer subject matter jurisdiction on federal courts. *See Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1468 (11th Cir.1997) (stating that 9 U.S.C. § 4 provides for order compelling arbitration only when there is independent basis of jurisdiction). Instead, a federal court must have an independent basis of jurisdiction to hear a case that arises under the Arbitration Act. *See id.* Because this case involves a dispute over a vessel charter agreement, the court has subject matter jurisdiction in admiralty under 28 U.S.C. § 1333. *See Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.*, 207 F.3d 1247, 1250 (11th Cir.2000) (holding that dispute regarding bareboat charter agreement was subject to admiralty jurisdiction); *Sea Lane Bahamas Ltd. v. Europa Cruises Corp.*, 188 F.3d 1317, 1320 (11th Cir.1999) (holding that dispute over settlement agreement regarding vessel charter agreement was subject to admiralty jurisdiction).

### B. The Federal Arbitration Act

■■■ This petition to compel arbitration has been filed pursuant to the Federal Arbitration Act, specifically 9 U.S.C. § 4.[5]

---

**4.** While the petition to compel arbitration does not specify the amount of disputed damages, the petitioners allege that the vessel has

incurred "required repairs of approximately $37,710." Pet'n at ¶ 10.

**5.** The relevant part of 9 U.S.C. § 4 provides, "A party aggrieved by the alleged failure, ne-

The United States Supreme Court has held that the federal policy favoring arbitration compels district courts to give broad deference to the enforcement of arbitration clauses within the coverage of the Federal Arbitration Act. *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). The Arbitration Act was designed to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Id.* When deciding whether parties have agreed to arbitrate a dispute, however, courts ordinarily should rely on state law principles that govern the formation of contracts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

The respondent does not contest the fact that the parties' dispute is subject to arbitration. Instead, it argues that the petitioner sought to compel arbitration in the wrong forum because arbitration should occur in Puerto Rico. The respondent's first argument in support of dismissal is that this court lacks personal jurisdiction over the respondent. The respondent also contends that, if this court does have jurisdiction, the arbitration clause is ambiguous and does not mandate arbitration in Florida. The respondent's final argument is that the court should dismiss the petition under the doctrine of *forum non conveniens*. The first argument is dispositive of this case.

## C. Personal Jurisdiction

### 1. Congress Has Not Conferred Personal Jurisdiction

During oral argument on the petition to compel arbitration and the respondent's motion to dismiss, the petitioner's sole argument was that 9 U.S.C. § 4 of the Arbitration Act confers personal jurisdiction. Under Federal Rule of Civil Procedure 4(e),[6] a federal court looks either to a federal statute or to the long arm statute of the state in which it sits to determine whether a defendant is amenable to service, a prerequisite to the exercise of personal jurisdiction. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987). The petitioner contends that the following language from the Arbitration Act indicates that Congress sought to vest all United States district courts with personal jurisdiction over petitions to compel arbitration: "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. § 4. According to the petitioner, this language vests the court with personal jurisdiction over this case because the statute trumps personal jurisdiction analysis under a state's long arm statute.

In *Omni*, the Court was faced with the question of whether language in the Commodity Exchange Act implicitly provided for nationwide service of process and, therefore, nationwide personal jurisdiction in private causes of action.[7] The

---

glect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the matter provided in such agreement."

6. Federal Rule of Civil Procedure 4(e) provides, in part:
 Unless otherwise provided by federal law, service upon an individual from whom a

waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in any judicial district of the United States:
 (1) pursuant to the law of the state where the district court is located. . . .

7. Although *Omni* focuses on whether Congress has granted nationwide service of process, rather than personal jurisdiction, cases discussing service of process are applicable here because "[w]hen a federal statute provides for nationwide service of process, it becomes the statutory basis for personal juris-

Court compared the relevant provision, 7 U.S.C. § 22, with other sections of the Commodity Exchange Act. *Omni*, 484 U.S. at 105–06, 108 S.Ct. at 410. Other courts had found that Congress had authorized nationwide service of process in the following provisions:

> § 6c (in a Commodity Futures Trading Commission (CFTC) action, service authorized "wherever the defendant may be found"); § 6d(4) (in an action by a state attorney general, service authorized "wherever defendant may be found"); and § 14(d) (in enforcement action by beneficiary of a CFTC order, service authorized "anywhere in the United States").

*Id.*, 484 U.S. at 105–106, 108 S.Ct. 404. The Court stated that, unlike these statutory provisions, § 22, which authorizes private causes of action, was silent as to service of process. The Court added:

> We find it significant that Congress expressly provided for nationwide service of process in those sections but did not do so in the new § 22.... It would appear that Congress knows how to authorize nationwide service of process when it wants to provide for it. That Congress failed to do so here argues forcefully that such authorization was not its intention.

*Id.* Because Congress did not authorize nationwide service of process in § 22, the Court refused to imply nationwide personal jurisdiction.

■ Subsequent cases have cited *Omni* for the proposition that statutory grants of personal jurisdiction must be explicit. *See, e.g., Federal Deposit Ins. Corp. v. Abrams*, 893 F.Supp. 4, 5 (D.Mass.1995) (holding that Federal Deposit Insurance Act did not provide for personal jurisdiction, where Congress did not explicitly grant it); *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F.Supp. 1102, 1108 (S.D.Ga.1994) (finding that ERISA contained explicit grant of personal juris-

diction). *As in *Omni*, the statutory provision at issue in this case is unlike other statutes that authorize nationwide service of process and personal jurisdiction. The "district in which the petition is filed" language does not mention venue or service of process; nor does it contain an explicit grant of nationwide service of process or jurisdiction, as required by *Omni*. By comparison, other federal statutes explicitly authorize nationwide service of process or personal jurisdiction by their terms. Compare, for instance:

1. The Sherman Act: 15 U.S.C. § 5, which states, "Whenever it shall appear to the court before which any proceedings under section 4 of this title may be pending, that the ends of justice require that other such parties should be brought before the court, the court may cause them to be summoned, whether they reside in the district in which the court is held or not...."

2. The Employee Retirement Income Security Act: 29 U.S.C. § 1132(e)(2), which states, "Jurisdiction... Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found."

3. The Securities Exchange Act of 1934: 15 U.S.C. § 77v, which states, "Jurisdiction of offenses and suits, (a) Federal and State courts; venue; service of process... Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district court where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an

diction." *Republic of Panama v. BCCI Holdings*, 119 F.3d 935, 942 (11th Cir.1997).

inhabitant or wherever the defendant may be found."

4. The Racketeer Influenced and Corrupt Organizations Act: 18 U.S.C. § 1965, which states, "Venue and process, (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court for the United States for any district in which such person resides, is found, has an agent, or transacts his affairs".

Moreover, the language relied on by the petitioner does not support the conclusion that the provision is referring to personal jurisdiction. The phrase, "The hearing and proceedings", as used in 9 U.S.C. § 4 refers to the arbitration hearings themselves, not the district court proceedings. This conclusion is supported by the language of the preceding sentence, which states "[T]he court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

■ By comparison, there is a sentence within 9 U.S.C. § 4 that *does* address service of process. It states, "Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure." Under Rule 4(e), if a federal statute does not provide for service of process, the district court must look to the state long-arm statute. *See Cable/Home Comm. Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855–56 (11th Cir.1990) ("When jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure requires that both assertion of jurisdiction and service of process

be determined by state amenability standards or the state long-arm statute."). Because 9 U.S.C. § 4 is silent as to service of process or personal jurisdiction, the court must look to Florida's long-arm statute to determine whether personal jurisdiction exists in this case.

**2. Florida's Long-arm Statute**

■ Assuming that the forum selection clause in question is valid and that it indicates the parties' intent to arbitrate their dispute in Florida, the court lacks the power to enforce the agreement because it does not have personal jurisdiction over the respondent. Absent the forum selection clause in the parties' agreement, the petitioner conceded during oral argument that the court lacks personal jurisdiction on the basis of the Florida long-arm statute alone.[8] Therefore, the next issue is whether the forum selection clause of the parties arbitration agreement is sufficient to confer personal jurisdiction over the respondent. This issue is governed by Florida law.

**2. Other Federal Cases Are Inapplicable**

Although neither the Eleventh Circuit nor federal district courts within the circuit have considered the effect of forum selection clauses within arbitration agreements, the petitioners correctly point out that other courts that have addressed this issue hold that forum selection clauses confer personal jurisdiction upon the courts of the chosen forum. *See Management Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851,

8. As with diversity cases, in determining whether personal jurisdiction exists in admiralty cases, a federal court must look to the long-arm statute of the state where it sits and the cases that interpret that statute. *See Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1072–74 (11th Cir.1999) (applying Florida long-arm statute to determine whether personal jurisdiction exists over defendant to suit in admiralty); *Shaffer v. Tiffany Yachts, Inc.*, 1996 WL 870734, *2 (S.D.Fla. Oct.31, 1996) (same); *see also Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 663 (5th Cir.2000) (holding that, in admiralty, federal court conducts two-prong inquiry under state long-arm statute and United States Constitution to determine whether personal jurisdiction exists); *Sunbelt Corp. v. Noble, Denton, & Assoc., Inc.*, 5 F.3d 28, 30 (3d Cir.1993) (applying state long-arm statute in admiralty case to determine whether personal jurisdiction exists).

854 (6th Cir.1997) ("[W]hen parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration. . . ."); *Menorah Ins. Co., Ltd. v. INX Reins. Corp.*, 72 F.3d 218, 222 n. 6 (1st Cir.1995) ("[F]orum selection clause, even one for arbitration, confers personal jurisdiction. . . ."); *Petrol Shipping Corp. v. Kingdom of Greece*, 360 F.2d 103, 107 (2d Cir. 1966) ("[B]y agreeing to arbitrate in New York a party makes himself as amenable to suit as if he were physically present in New York."); *Fireman's Fund Ins. Co. v. National Bank for Coop.*, 1994 WL 224805, *1 (N.D.Cal. May 9, 1994) ("As a party to the Agreement containing the . . . forum selection clause, Aldus consented to the jurisdiction of this court."); *National Railroad Passenger Corp. v. Boston and Maine Corp.*, 1987 WL 16842, *1 (D.D.C. Sept.1, 1987) (holding that "party consented to be sued in the District" by agreeing to arbitrate there).

The problem with the cases cited by the petitioner is that none of those decisions apply Florida's long-arm statute, and the long-arm statutes of the states where those courts sit automatically confer personal jurisdiction when parties enter into forum selection clauses. *See, e.g. Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir.1994) (noting that forum selection clause alone can confer personal jurisdiction); *Diebold, Inc. v. Firstcard Fin. Svcs.*, 104 F.Supp.2d 758, 763 (N.D.Oh.2000) (holding that forum selection clause conferred personal jurisdiction upon Ohio district court); *National Union Fire Ins. Co. v. Worley*, 257 A.D.2d 228, 230, 690 N.Y.S.2d 57 (N.Y.A.D.1999) (holding that forum selection clause is tantamount to consent to personal jurisdiction). As noted in the preceding subsection, whether personal jurisdiction exists in an admiralty case depends on the forum state's long-arm statute. Florida law differs from that of other states in that it does not confer personal jurisdiction upon a court simply because the parties have executed a forum selection clause. As explained below, Florida requires an additional basis for a court to exercise personal jurisdiction under the state's long-arm statute.

**3. Florida's Approach to Forum Selection Clauses**

 In *McRae v. J.D./M.D., Inc.*, 511 So.2d 540 (Fla.1987),[9] the Florida Supreme Court answered the following certified question in the negative: "Can a Florida court exercise in personam jurisdiction over the objection of a nonresident defendant who has done none of the acts specified in Florida's long-arm statute, section 48.193, Florida Statutes, but who is a party to a contract which designates Florida as the forum for any subsequent litigation?" *McRae*, 511 So.2d at 541. According to the court, a forum selection clause designating Florida as the forum cannot operate as the sole basis for Florida to exercise personal jurisdiction over an objecting nonresident defendant because "[c]onspicuously absent from the long-arm statute is any provision for submission to in personam jurisdiction merely be contractual agreement." *Id.* at 543. The court added:

> [W]e reject the suggestion that a defendant waives his due process right to contest the jurisdictional issue merely by signing a contract containing a per-

**9.** No reported Florida decision has discussed forum selection clauses in arbitration agreements. The Florida decisions relied upon in this order discuss forum selection clauses in other contexts. However, whether the Florida and Eleventh Circuit cases applying Florida law involve petitions for arbitration or traditional litigation is a distinction without a difference because the United States Supreme Court has stated that arbitration contracts are nothing more than specialized forum selection clauses. *See Rodriguez v. Shearson/American Express, Inc.*, 490 U.S. 477, 483, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989) ("arbitration agreements . . . are 'in effect, a specialized kind of forum-selection clause' ") (citations omitted). As a result, Florida decisions involving forum selection clauses outside of the arbitration context are applicable to the issue before the court.

missive jurisdiction clause.... [W]e disapprove that portion of the district court's analysis which elevates the "construction and enforceability of contracts," over the requirements of both our long-arm statute and the due process clause of the fourteenth amendment.

*Id.* at 543–44 (citations omitted).

Subsequent Florida cases have recognized that the Florida rule, which places little weight on forum selection clauses, is the minority view and that most other jurisdictions hold that a choice of forum clause is sufficient to waive the requirement for minimal contacts. *See Desai Patel Sharma, Ltd. v. Don Bell Indus., Inc.,* 729 So.2d 453, 454 (Fla. 5th DCA 1999) (holding that defendant's breach of contract in Florida coupled with forum selection clause was sufficient to confer personal jurisdiction); *see also Alexander Proudfoot Co. World Headquarters L.P. v. Thayer,* 877 F.2d 912, 918 (11th Cir.1989) ("This aspect of federal common law, favoring the enforcement of conferral of personal jurisdiction clauses, differs sharply from Florida law."). United States district courts sitting in Florida apply the same approach as the state's courts. For example, in *American Investors Life Insurance Co. v. Webb Life Insurance Agency, Inc.,* 876 F.Supp. 1278 (S.D.Fla.1995), this court found that, because there was no basis for jurisdiction under the state's long-arm statute, it did not have personal jurisdiction over a nonresident defendant who had agreed to a Florida forum selection clause. *Id.* at 1280–81. This was because the defendants did not conduct any business in Florida and the contract in question was to be performed in North Carolina. *See id.* at 1281.

As acknowledged by the court in *Desai Patel Sharma, Ltd.,* 729 So.2d at 454, Florida clearly represents the minority view on forum selection clauses. Without an express recognition by the Eleventh Circuit or Florida courts that Florida's rule can be relaxed in the context of a petition to compel arbitration, the petitioners in this case must show additional grounds to support the court's exercise of personal jurisdiction over the respondent.[10]

### 4. Application of Florida Law

■ If the court is to exercise personal jurisdiction over the respondent, it must find an independent basis for jurisdiction under Florida's long-arm statute. The evidence introduced by the petitioners does not support such a finding. In their petition to compel arbitration, the petitioners fail to allege facts sufficient to establish personal jurisdiction. Instead, they rely only upon the forum selection clause, which, as discussed above, is not dispositive of jurisdiction in Florida. Likewise, the affidavit submitted by the petitioners in support of their reply brief alleges very few connections with Florida. Johns's affidavit states only that (1) the EAST WIND II was in Florida in 1996, when the parties entered into negotiations for the vessel's charter; (2) the respondent traveled to Florida to inspect the vessel; and (3) upon the execution of the 1996 agreement, the respondent took delivery of the EAST WIND II in Florida. Johns Affid. at ¶¶ 2, 8, 13.

These contacts do not establish jurisdiction under Florida's long-arm statute. *See* Fla. Stat. § 48.193. The relevant provisions of the statute provide that a foreign resident will be subject to the jurisdiction of the courts of Florida "for a cause of action arising from the doing of any of the following acts":

 (a) Operating, conducting, engaging in, or carrying on a business or business

---

**10.** Note that it is the party who seeks relief from the court who bears the burden of establishing personal jurisdiction over the defendant. *See S & Davis Int'l, Inc. v. Republic of Yemen,* 218 F.3d 1292, 1303 (11th Cir.2000) (citing *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990)) (citations omitted). This burden can be met by submitting affidavits and other written materials. *See Taylor,* 912 F.2d at 431.

venture in this state or having an office or agency in this state.

(b) Committing a tortious act within this state.

. . . . .

(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside the state, if, at or about the time of the injury, either:

1. The defendant was engaged in solicitation or service activities within this state; or

2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.

. . . . .

(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of, the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193.

A feature common to all of these provisions, except the general jurisdiction provision of subsection (2), is the requirement that the party against whom relief is sought have committed some act related to the litigation in Florida. None of these provisions have been satisfied in this case because the respondent's inspection and acceptance of delivery of the vessel in Florida is not related to its alleged breach of the agreement or failure to arbitrate. The petitioners have not alleged that the respondent operates or conducts a business in Florida, nor that any tortious acts occurred in this state. The respondent could not have caused any injury to persons or property in Florida because the petitioners are California residents, and

the vessel is located in Puerto Rico or elsewhere in the Caribbean. Most important to the facts of this case, the respondent could not have breached the contract in Florida because the charter agreement did not require that any acts be performed here, and no acts were performed in Florida pursuant to the 1999 agreement. *See New York Marine Managers v. Maitland Bros. Co.,* 746 F.Supp. 95, 97 (S.D.Fla. 1990) (holding that Pennsylvania corporation whose vessel ran aground off of Florida coast could not be subject to personal jurisdiction in Florida for breach of insurance contract). In fact, the contract in question provided only for the operation and maintenance of the vessel in Puerto Rico. *See* Pet.'s Pet'n to Compel at Ex. 1.

The petitioners also have failed to make a sufficient showing under the general jurisdiction provision of Florida Statutes § 48.193(2). They neither have alleged nor shown that the respondent was engaged in a "substantial and not isolated activity" within Florida. Many Florida decisions have addressed factual circumstances where vessels were at one time located in Florida, and these cases require more than mere berthing or delivery of the vessel in the state. For example, in *Morley v. Lady Allison, Inc.,* 633 So.2d 1173 (Fla. 3d DCA 1994), the court held that the trial court had jurisdiction over a Delaware vessel owner where the owner took delivery of the vessel in Florida, but the Florida delivery was not the only fact that gave rise to personal jurisdiction. The court noted that the vessel's activities involved Florida "almost to the exclusion of any other jurisdiction" because each of the vessel's cruises began and ended in Florida, the vessel was refitted and repaired for three months of each year in Florida, and the vessel's owners had spent approximately $450,000 in the state in fuel and repairs. *Id.* at 1174. These activities are more substantial than those of the respondent in this case, which only inspected the vessel and took delivery of it in Florida. *See also New York Marine Managers v. Maitland Bros. Co.,* 746 F.Supp. 95, 97

(S.D.Fla.1990) (holding that navigating vessel through Florida waters to get from Massachusetts to Alabama did not confer general jurisdiction); *American Overseas Marine Corp. v. Patterson,* 632 So.2d 1124, 1128–30 (Fla. 1st DCA 1994) (holding that vessels' calls at Florida ports were merely fortuitous and could not confer general jurisdiction); *Price v. Point Marine, Inc.,* 610 So.2d 1339, 1341–42 (Fla. 1st DCA 1992) (holding that vessel's three brief visits in state did not confer general jurisdiction).

What is even more troubling for the petitioners' position is that their allegations of Florida activities (inspection and delivery) are related only to the 1996 agreement, which had expired prior to the commencement of this litigation. The 1999 agreement specifically states that the vessel "is now docked in Fajardo, Puerto Rico." Pet's Pet'n to Compel at Ex. 1. Presumably, under the 1999 agreement, further inspections and "redelivery" took place in Puerto Rico, not in Florida. The expiration of the 1996 agreement and the fact that this case involves only the 1999 agreement makes any allegations related to respondent's inspection and acceptance of the vessel in Florida prior to entering into the 1996 agreement of questionable relevance to this matter. The absence of further Florida contacts compels the conclusion that the petitioners have failed to satisfy Florida's long-arm statute. Accordingly, the forum selection clause is insufficient to establish personal jurisdiction over the respondent, and the petition to compel arbitration must be dismissed. Therefore, it is:

**ORDERED AND ADJUDGED** that:

1. Notwithstanding the parties' stipulation that arbitration is the proper way to address their dispute, the petition to compel arbitration in the Southern District of Florida (DE # 1) is DISMISSED due to this forum's lack of personal jurisdiction.

2. The Clerk shall CLOSE this case.

3. All pending motions are DENIED AS MOOT.